

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00541-CV

Martie Y. **GARCIA-VELA**, Individually and d/b/a The Law Office of Martie Garcia-Vela, P.C.,
Appellant

v.

Norman **JOLLY**, Individually and d/b/a Norman Jolly, P.C. and Michael Jolly, Individually and
d/b/a Michael B. Jolly, P.C.,
Appellees

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. DC-19-592
Honorable Martin Chiuminatto, Judge Presiding[1]

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: April 19, 2023

AFFIRMED

This appeal concerns a fee-sharing dispute over attorney's fees. Martie Y. Garcia-Vela appeals a final judgment (1) granting Appellees Norman Jolly and Michael Jolly's summary judgment motion, (2) denying her summary judgment motions, and (3) dismissing her counterclaims.[2] The trial court's judgment is affirmed.

---

[1] Sitting by assignment.

[2] For convenience, appellant is referred to as Garcia-Vela, and appellees are referred to as the "Jollys" except where the appellees' first and last names are necessary for clarity.

## BACKGROUND

### A. Construction Defect Litigation and Agreements

In 2013, the Rio Grande City Consolidated Independent School District,[3] Norman Jolly, and Garcia-Vela entered into a "Power of Attorney and Contingency Fee Contract" ("2013 contingency-fee agreement") permitting the attorneys to represent the district in its effort to recover construction defect damages arising from the construction of Grulla Elementary School. Under the 2013 contingency-fee agreement, Garcia-Vela was entitled to a 20% share of the total attorney's fees paid by the district.

Two years later, the parties entered into a different fee-sharing agreement. On March 24, 2015, Norman Jolly wrote to Garcia-Vela:

> Please allow this to serve as our joint enterprise/joint venture ("JE/JV") agreement regarding the above captioned matter as follows:
>
> 1. In exchange for your legal services to be provided as a result of this JE/JV you will receive 10% of the gross attorney's fees apportioned to Norman Jolly, PC and Mike Jolly, PC as set forth in the attached contingency fee contract. Exhibit "A."
> 2. We expressly agree that we will work together as co-counsel to carry out a common purpose in which we both have a pecuniary interest and equal rights to control and direct the enterprise.
>
> If this agreement is acceptable, please acknowledge below.

The "above captioned matter" was identified as construction defect litigation involving New Ringgold Elementary, Dr. Ramirez Elementary, Veterans Middle School, Grulla High School, General Ricardo Sanchez Elementary, and Rio Grande High School. Garcia-Vela signed on the line above the words "Agreed, Martie Garcia Vela" ("JE/JV agreement"). The district did not sign the JE/JV agreement, and it was signed by no other attorneys.

---

[3] The district is now known as Rio Grande City Grulla Independent School District.

Six days later, the district, Norman Jolly, P.C., Michael Jolly, P.C., and four other attorneys entered into a "Power of Attorney and Contingency Fee Contract" ("2015 contingency-fee agreement") permitting the attorneys listed in the agreement to represent the district in its effort to recover construction defect damages arising from the construction of the same schools identified in the JE/JV agreement. Garcia-Vela was not listed among the attorneys.

## B. Procedural History

The Jollys filed suit against Garcia-Vela in November 2019 based on the parties' dispute over attorney's fees.[4] In their third amended petition, they sought a declaratory judgment pursuant to Texas Civil Practice and Remedies Code section 37.004 seeking several declarations, including a declaration that they did "not owe [Garcia-Vela] any attorney fees due to the omission of her name from the [2015 contingency-fee] agreement and that no fees are owed to [Garcia-Vela] for any other basis she has alleged in her counterclaim[s]" and they were entitled to attorney's fees and costs. Garcia-Vela answered and countersued Norman Jolly for breach of the JE/JV agreement, breach of fiduciary duty, and negligent misrepresentation. She sued Norman Jolly and Michael Jolly for negligence, quantum meruit, money had and received, and a declaratory judgment.

After the parties conducted discovery, Michael Jolly and Norman Jolly[5] moved for traditional summary judgment on their declaratory judgment claim and traditional and no evidence grounds on each of Garcia-Vela's counterclaims. Garcia-Vela moved for traditional summary judgment on the Jollys' declaratory judgment claim and separately for traditional summary judgment on her breach of contract counterclaim against Norman Jolly. Without specifying the basis for its decision, the trial court granted the Jollys' summary judgment motion except as to

---

[4] The district is not a party to this appeal.

[5] Garcia-Vela disputes Norman Jolly filed the motion, and we consider the issue in this opinion.

their requested declaration regarding their attorney's fees and costs, denied Garcia-Vela's motions for summary judgment, and dismissed Garcia-Vela's counterclaims with prejudice.

This appeal followed.

### WHETHER NORMAN JOLLY FILED A SUMMARY JUDGMENT MOTION

Before considering the summary judgment motions, this court must first determine whether Norman Jolly filed a summary judgment motion in the trial court. Garcia-Vela argues the trial court erred in overruling her objection, arguing Norman Jolly was not part of the summary judgment motion filed. Garcia-Vela explains Norman Jolly had fired his attorney, J.M. Chuy Alvarez, on July 29, 2021 in favor of self-representation, and he "did not file his own motion for summary judgment." Garcia-Vela contends she objected to treating the summary judgment motion filed by the Jollys as having included Norman Jolly, but the trial court overruled her objection.

The record shows, during a July 29, 2021 hearing, Norman Jolly attempted to argue a pending motion; Garcia-Vela objected to his arguing that motion because he had counsel, and he fired his attorney in order to argue the motion. One month later, Alvarez filed a summary judgment motion on behalf of Michael Jolly and Norman Jolly. In opposition to the motion, Garcia-Vela objected to the motion being filed on Norman Jolly's behalf after what transpired at the previous hearing, but cited no authority identifying why the motion was improper or showing any prejudice as a result of the Jollys filing a single motion. During the hearing on the parties' summary judgment motions, the trial court overruled the objection, observing, "Maybe he rehired him. I don't know."

Here, Garcia-Vela cites no legal authority to support her contention. *See* TEX. R. APP. P. 38.1(i). Because Alvarez represented Norman Jolly before the July 29, 2021 hearing, Garcia-Vela has not identified how she was injured or prejudiced by Alvarez representing both Jollys on summary judgment, and no substitution of counsel was filed replacing Alvarez, this court cannot conclude the trial court abused its discretion in overruling Garcia-Vela's objection. *See Blanche v.*

*First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 450 (Tex. App.—Dallas 2002, no pet.) (concluding language of Texas Rule of Civil Procedure Rule 10, addressing substitution of counsel, did not provide motion filed by another attorney void unless rule's requirements were met and appellant did not otherwise demonstrate prejudice); *see also Spellmon v. Collins*, 970 S.W.2d 578, 580 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

### STANDARD OF REVIEW

"We review grants of summary judgment de novo." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "If a party moves for summary judgment on both traditional and no-evidence grounds, as the parties did here, we first consider the no-evidence motion." *Id.* "If the non-movant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Id.* "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all of the issues presented, and render the judgment the trial court should have." *Id.*

A party may move for summary judgment on no evidence grounds by arguing "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). "To defeat a no-evidence motion, the non-movant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *Lightning Oil*, 520 S.W.3d at 45. "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a

mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

"A party moving for traditional summary judgment bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law." *Id.*; *see* TEX. R. CIV. P. 166a(c); *see also Tello v. Bank One, N.A.*, 218 S.W.3d 109, 113–14 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("A plaintiff asserting a traditional motion for summary judgment in opposition to a defendant's counterclaim must disprove at least one essential element of the counterclaim as a matter of law."). "If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a material fact issue." *Tello*, 218 S.W.3d at 114 (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).

When reviewing a motion for summary judgment, "we review the evidence in the light most favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts against the motion." *Lightning Oil*, 520 S.W.3d at 45.

## ANALYSIS

At the center of this dispute is Garcia-Vela's contention she is owed attorney's fees pursuant to the JE/JV agreement. We therefore begin our review by considering the trial court's grant of summary judgment in favor of Norman Jolly on Garcia-Vela's counterclaim against him for breach of the JE/JV agreement, followed by reviewing the trial court's grant of summary judgment for the Jollys as to Garcia-Vela's other counterclaims. Finally, we will consider the trial court's grant of summary judgment for the Jollys on their declaratory judgment claim.

### A. Claims Against Norman Jolly

#### 1. Breach of Contract

Because the trial court did not specify whether it granted on no evidence grounds or traditional grounds Norman Jolly's summary judgment for the breach of contract counterclaim, this court must begin by addressing the no evidence grounds. *See id.* The elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). A valid contract exists if a claimant establishes "(1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *Id.*

In his summary judgment motion, Norman Jolly argued there was no evidence the JE/JV agreement existed, breach of that agreement if it did, and no related damages. In response to the motion, Garcia-Vela identified as evidence: the JE/JV agreement as executed by her and Norman Jolly, emails showing Jolly and Garcia-Vela referencing the JE/JV agreement and her attorney's fees percentage, fees paid for the district's settlements, and attorney's fees paid to Garcia-Vela based on those settlements. Considering this evidence in the light most favorable to Garcia-Vela and indulging every reasonable inference in her favor, Garcia-Vela has produced more than a scintilla of evidence raising a genuine issue of material fact as to the challenged elements on the breach of contract counterclaim. *Lightning Oil*, 520 S.W.3d at 45.

Turning to the Jollys' summary judgment motion on traditional grounds, they argued the breach of contract counterclaim failed because the JE/JV agreement violates Rule 1.04(f) of the

Texas Disciplinary Rules of Professional Conduct and Texas Government Code § 82.065(a) and is therefore unenforceable and void as against public policy. Specifically, they contended Rule 1.04 required the district to approve the JE/JV agreement because it was a Rule 1.04(f) fee-sharing agreement, and by the district not signing it, proved it did not consent to the agreement.

Garcia-Vela cross-moved for summary judgment on her breach of contract counterclaim, arguing: (1) the JE/JV agreement was a valid and enforceable agreement; (2) the district knew Garcia-Vela was representing it in the construction defect litigation; (3) the JE/JV agreement could have been performed legally but for the Jollys' failure to submit it to the district for approval; (4) Garcia-Vela performed under the agreement; (5) Norman Jolly breached the JE/JV agreement when he failed to pay Garcia-Vela 10% of the gross attorney's fees; and (6) Garcia-Vela was damaged as a result.

### a. Law

We begin with Jolly's contention the JE/JV agreement is unenforceable and void as against public policy because it violates Rule 1.04(f). Although "nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty," Rules of Prof'l Conduct pmbl., "[a]ll lawyers practicing in Texas are presumed to be aware of the Rules." *Cokinos, Bosien & Young v. Moore*, No. 05-18-01340-CV, 2020 WL 549066, at \*5 (Tex. App.—Dallas Feb. 4, 2020, no pet.) (mem. op.); *see also Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 n.6 (Tex. 2006) ("Although the Disciplinary Rules do not define standards of civil liability for attorneys, . . . we have applied Rule 1.04 as a rule of decision in disputes concerning attorney's fees." (citing *Johnson*, 73 S.W.3d 193, 205 (Tex. 2002)).

The Texas Disciplinary Rules of Professional Conduct provide attorneys in different law firms agreeing or arranging to divide fees are permitted to do so only if:

(1) the division is:

    (i) in proportion to the professional services performed by each lawyer; or

    (ii) made between lawyers who assume joint responsibility for the representation; and

(2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:

    (i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and

    (ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and

    (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and

(3) the aggregate fee [is not illegal or unconscionable].

Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f); *see, e.g.*, *Est. of Aguilar*, No. 04-15-00688-CV, 2017 WL 1244447, at *8 (Tex. App.—San Antonio Apr. 5, 2017, pet. denied) (mem. op.); *Gillespie v. Hernden*, 516 S.W.3d 541, 543–44 (Tex. App.—San Antonio 2016, pet. denied).

In *Johnson v. Brewer & Pritchard, P.C.*, the Texas Supreme Court held a Rule 1.04(f) fee sharing agreement "between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement." 73 S.W.3d at 205 (construing earlier version of rule 1.04(f) requiring only that client be "advised of" agreement and "not object to" lawyers participating, and concluding appellants failed to offer evidence clients objected to appellants and appellee sharing in fees and appellants therefore not entitled to summary judgment); *see, e.g.*, Tex. Disciplinary Rules Prof'l Conduct R. 1.04(g) ("Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation within the meaning of this rule."); *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *9 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (providing contract violating disciplinary rules unenforceable as against public policy and holding client without knowledge of information required by Rule

1.04(f)(2) has not consented to fee sharing agreement); *Aguilar*, 2017 WL 1244447, at *8 (agreements violating Rule 1.04(f)(2) are "unenforceable and void as against public policy" (citing cases)); *Garcia v. Garza*, 311 S.W.3d 28, 43 (Tex. App.—San Antonio 2010, pet. denied) (citing cases).

Without knowledge and consent, there is no agreement "and thus no damages because there would be no loss." *Johnson*, 73 S.W.3d at 205; *see Cokinos*, 2020 WL 549066, at *3 (concluding fee-sharing agreement violated Rule 1.04(f)(2) because client did not consent to fee sharing in writing and chose not to otherwise consent to fee-sharing); *Dickens*, 2018 WL 6839568, at *13 (concluding oral fee sharing agreement failed to satisfy public policy expressed in Rule 1.04(f) and (g) because no evidence client consented to arrangement in writing before association or referral and after being advised of specific information required by Rule 1.04(f)(2)); *accord Gillespie*, 516 S.W.3d at 543–44 (concluding clients received Rule 1.04(f)'s protections because of compliance with Rule 1.04(f)(2)'s requirements); *Garza v. Gray & Becker, P.C.*, No. 03–02–00136–CV, 2002 WL 31769034, at *1, *7-*8 (Tex. App.–Austin Dec. 12, 2002, pet. denied) (mem. op.) (applying quasi-estoppel and permitting collection of attorney's fees from individual appellants because individual appellants' statutorily-designated and exclusive union representatives entered into contingency fee agreement).

### b. Application

Here, neither party disputes the JE/JV agreement is a fee-sharing agreement, and the evidence is undisputed the district never signed the fee sharing agreement. Our analysis does not end here. To prevail on summary judgment, the Jollys were required to conclusively negate the district's consent pursuant to Rule 1.04(f)(2)'s requirements. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f)(2); *Johnson*, 73 S.W.3d at 205; *see Cokinos*, 2020 WL 549066, at *3. In other words, the Jollys were required to show there was no material fact issue establishing the district

did not consent to or have knowledge of: (1) the identity of all lawyers or law firms who will participate in the fee-sharing agreement; (2) the fees being divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation; or (3) the attorney's fees share each lawyer or law firm was to receive. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f)(2); *Johnson*, 73 S.W.3d at 205; *see Cokinos*, 2020 WL 549066, at \*3.

The evidence, including depositions and affidavits from district board members, shows district board members were aware Garcia-Vela was representing the school district in construction defect litigation and assuming joint responsibility for the representation. However, nothing in the record evidences the district or any board member had knowledge of or consented to Garcia-Vela's 10% fee-sharing as provided in the JE/JV agreement. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f)(2); *compare Cokinos*, 2020 WL 549066, at \*3 (client did not consent to fee sharing in writing and chose not to otherwise consent); *and Dickens*, 2018 WL 6839568, at \*13 (no evidence client consented to fee-sharing in writing before association or after being advised of Rule 1.04(f)(2) information); *with Gillespie*, 516 S.W.3d at 543–44 (clients knew fee share each lawyer received).

Because there is no evidence in the record showing the district consented to or knew of Garcia-Vela's share of attorney's fees, the JE/JV agreement is unenforceable and void as against public policy. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f)(2), (g) ("Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation within the meaning of this rule."); *Johnson*, 73 S.W.3d at 205; *see, e.g.*, *Aguilar*, 2017 WL 1244447, at \*8 (providing "Texas courts have consistently held that an agreement violating this disciplinary rule is unenforceable and void as against public policy" (citing cases)).

### c. Quasi-Estoppel

Garcia-Vela contends the JE/JV agreement is nevertheless enforceable against Norman Jolly under a quasi-estoppel theory because the district and Norman Jolly accepted the JE/JV agreement's benefits. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citation omitted); *see, e.g.*, *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020). The doctrine "does not require a showing of a false representation or detrimental reliance." *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

However, it may not bind a party to the terms of a void or unenforceable agreement. *Watts v. Pilgrim's Pride Corp.*, No. 12-04-00082-CV, 2005 WL 2404111, at *3 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op.) ("A void agreement has no legal effect and cannot be rendered enforceable by other means, such as waiver, quasi-estoppel, or ratification."); *see also Nash v. Beckett*, 365 S.W.3d 131, 145–46 (Tex. App.—Texarkana 2012, pet. denied) (providing quasi-estoppel "exists to prevent the loss of existing rights, not to create them"). *See generally Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied) (affirming trial court summary judgment for appellee because alleged contract was illegal and void against public policy and providing, among other things "courts generally will not lend their equity powers to enforcing contracts which violate sound public policy"). Because the JE/JV agreement is unenforceable and void as against public policy, quasi-estoppel could not render the agreement enforceable. *See Johnson*, 73 S.W.3d at 205; *Aguilar*, 2017 WL 1244447, at *8; *Watts*, 2005 WL 2404111, at *3; *Ohrt*, 398 S.W.3d at 329.

Accordingly, this court must conclude the trial court did not err by granting summary judgment for the Jollys on the breach of contract counterclaim.

## 2. Breach of Fiduciary Duty

We now turn to whether the trial court properly granted summary judgment for Norman Jolly on no evidence grounds as to the breach of fiduciary duty counterclaim. Norman Jolly argued he was entitled to summary judgment on this counterclaim because Garcia-Vela could not demonstrate he owed her a fiduciary duty, breached that duty, or caused damages.

"Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church*, 514 S.W.3d at 220. "Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 147 (Tex. 1996)) (internal quotation marks omitted). "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Id.* at 330–31 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)). "In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Id.*

"We also recognize an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id.* at 331 (quoting *Assoc. Indem. Corp. v. CAT Cont., Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). "However, '[i]n order to give full force to contracts, we do not create such a relationship lightly.'" *Id.* (quoting *Schlumberger*, 959 S.W.2d at 177). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* (quoting *Assoc. Indem. Corp.*, 964 S.W.2d at 288) (internal quotation marks omitted);

*see, e.g.*, *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 638 (Tex. 2018) ("A fiduciary duty generally 'arises from the relationship of the parties and not from the contract.'").

To support her counterclaim, Garcia-Vela identified evidence showing Norman Jolly's fiduciary duties arose from the JE/JV agreement, Jolly's failure to submit the agreement to the district for approval, and Jolly's failure to pay Garcia-Vela her share of fees. In other words, Garcia-Vela identified no facts or evidence establishing a special relationship of trust and confidence prior to and apart from the JE/JV agreement. *See Jody James Farms*, 547 S.W.3d at 638 (concluding liability was extra-contractual because claim did not depend on contract's existence or arise solely from contract and could stand independent of contract); *Meyer*, 167 S.W.3d at 331 (concluding no fiduciary relationship even though party claiming breach subjectively trusted other party and they worked together on prior arms-length transactions entered into for mutual benefit); *Constr. Fin. Servs., Inc. v. Chicago Title Ins. Co.*, No. 04-12-00375-CV, 2013 WL 1846613, at *8 (Tex. App.—San Antonio May 1, 2013, pet. denied) (mem. op.) (concluding evidence insufficient to establish preexisting relationship of trust and confidence even though evidence showed agent for appellee dated president of appellant and where parties had prior arm's length transactions for their mutual benefit).[6]

Because there is no evidence establishing a fiduciary relationship prior to and apart from the agreement, this court cannot conclude the trial court improperly granted summary judgment in favor of Norman Jolly on the breach of fiduciary duty counterclaim.[7]

---

[6] The Jollys further argue no fiduciary liability could attach to Michael Jolly because, even if the JE/JV agreement were enforceable, he was not a party to it. Garcia-Vela concedes in her brief the breach of fiduciary duty counterclaim was "only asserted against Appellee Norman Jolly," and this is confirmed by the record. We therefore need not consider this issue. *See* TEX. R. APP. P. 47.1.

[7] Garcia-Vela does not challenge the trial court's judgment on her negligent misrepresentation counterclaim against Norman Jolly; we therefore affirm the trial court's judgment on the counterclaim. *See* TEX. R. APP. P. 47.1; *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied) (providing reviewing court will affirm

### B. Claims Against Norman and Michael Jolly

#### 1. Negligence

Turning to the counterclaims against Norman and Michael Jolly, the Jollys moved for summary judgment on no evidence grounds as to Garcia-Vela's negligence counterclaim. A valid negligence counterclaim requires "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015).

The Jollys argued Garcia-Vela had no evidence of any of the elements. Garcia-Vela argued the Jollys had a duty to submit the JE/JV agreement to the district because they were the "associating attorneys" pursuant to Rule 1.04(f) and pointed to their admission they did not uphold their duty and submit the JE/JV agreement to the district for approval.

Although Rule 1.04(f) provides the Jollys have the "primary duty"—to ensure compliance with Rule 1.04, the Texas Disciplinary Rules of Professional Conduct do not "augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty," and a "[v]iolation of a rule does not give rise to a private cause of action." *See id.* pmbl. & Rule 1.04 cmt. 15; *Hoover Slovacek LLP*, 206 S.W.3d at 562; *Gillespie*, 516 S.W.3d at 546. Garcia-Vela identifies no other evidentiary basis for any such duty of the Jollys. Even if she had, Garcia-Vela's only alleged loss is based on the JE/JV agreement, and the economic loss rule would preclude her from recovering on a negligence theory for economic losses resulting from Norman Jolly's failure to perform under the JE/JV agreement. *See, e.g.*, *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) ("When the injury involves failure to perform a contract and the

summary judgment as to particular claim if appellant does not present argument challenging all grounds on which the summary judgment could have been granted on claim).

only loss is that economic loss that is the substance of the contract itself, the action sounds only in contract and not in tort.").

Because there is no evidence of any duty breached by the Jollys, this court must conclude the trial court properly granted summary judgment for the Jollys on the negligence counterclaim.

### 2. Quantum Meruit

The Jollys also moved for summary judgment on no evidence grounds as to quantum meruit, arguing Garcia-Vela could not prove she provided services to them, they accepted those services, or she expected the Jollys to pay her for services to them.

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). Quantum meruit stops "a party from being 'unjustly enriched' by 'retain[ing] the benefits of the . . . performance without paying anything in return.'" *Id.* (alterations in original) (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). A quantum meruit claim requires proof the defendant (1) received and accepted "valuable services"; (2) "used and enjoyed" them; and (3) "was reasonably notified that the plaintiff performing such services . . . was expecting to be paid by the person sought to be charged." *Id.* at 732-33. In general, a party may not recover in quantum meruit where there is a valid contract covering the services. *Id.* at 733.

Rather than showing how she provided legal services to the Jollys in support of her quantum meruit claim against them, Garcia-Vela countered the motion by pointing to evidence establishing she provided legal services to the district. She also referenced an email attaching a draft letter sent by Norman Jolly to her and several attorneys, which provides "Please see the attached DRAFT letter to Superintendent Garcia." Garcia-Vela explained in her briefing she provided a service to the Jollys when she reviewed the draft. But the affidavits in the record make

no mention of her having reviewed the letter. Nor does she identify evidence of any other service to the Jollys. *Cf. Reich & Binstock, LLP v. Scates*, 455 S.W.3d 178, 184 (Tex. App.—Houston [14th Dist.] 2014) (affirming trial court's grant of equitable relief to expert based on theory of quantum meruit where trial court found expert performed valuable services for counsel, had an expectation he would be paid by counsel, record reflected expert billed counsel for his services, and his rate was reasonable).

Because there is no evidence in the record establishing Garcia-Vela rendered any services to the Jollys, rather than to the district, this court must conclude the trial court properly granted the Jollys summary judgment on the quantum meruit counterclaim.

### 3. Money Had and Received

Lastly, the Jollys moved for summary judgment on traditional grounds as to money had and received.[8] Money had and received "was developed to redress circumstances involving unjust enrichment or an implied promise to pay what in good conscience defendant was bound to pay the plaintiff." *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.); *see Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) ("Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." (quoting *MGA*, 358 S.W.3d at 813) (internal quotation marks omitted)). "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. In defending

---

[8] Garcia-Vela challenges the trial court's grant of the Jollys' no evidence summary judgment motion on her money had and received counterclaim solely as to her belief she was entitled to fees under the JE/JV agreement. However, the Jollys did not move for summary judgment on the counterclaim as to the JE/JV agreement, and the trial court therefore did not grant the Jollys summary judgment as to that ground. We therefore need not consider it. *See* TEX. R. APP. P. 47.1.

against such a claim, a defendant may present any facts and raise any defenses that would deny a claimant's right under this theory." *Id.* (internal citation omitted).

Turning to the motion on traditional grounds, the Jollys had the burden to show there was no genuine issue as to any material fact as to at least one essential element of the money had and received counterclaim by presenting evidence of "any facts" or "rais[ing] any defenses that would deny" Garcia-Vela's counterclaim. *See Lightning Oil*, 520 S.W.3d at 45; *MGA*, 358 S.W.3d at 813. In other words, the Jollys were required to prove they did not possess any attorney's fees that, in equity and good conscience, were owed to Garcia-Vela, i.e., they were not unjustly enriched by failing to turn over certain attorney's fees to Garcia-Vela. *See MGA*, 358 S.W.3d at 813.

To meet their burden, the Jollys argued they owed Garcia-Vela nothing, citing evidence supporting their contention the JE/JV agreement was void and unenforceable. They also cited the 2015 contingency-fee agreement, which excluded Garcia-Vela, arguing the agreement "superseded" the JE/JV agreement. Garcia-Vela opposed the motion by reurging her arguments supporting her breach of contract and breach of fiduciary duty counterclaims, i.e., the JE/JV agreement was enforceable, it fell to the Jollys to have it approved by the district, and she did substantial work for the district in the construction defect litigation.

Because the JE/JV agreement is unenforceable and void as against public policy, Garcia-Vela may not recover for money had and received based on proof of the existence of the JE/JV agreement. *See Plumlee*, 832 S.W.2d at 759 (affirming trial court summary judgment for appellee because alleged contract was illegal and void against public policy and providing, among other things "courts generally will not lend their equity powers to enforcing contracts which violate sound public policy").

Garcia-Vela identifies no other basis for how the Jollys have retained attorney's fees that in equity and good conscience are owed to her, and this court cannot conclude the trial court erred

by granting the Jollys summary judgment on the money had and received counterclaim. *See Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied) (rejecting theory of money had and received as not supported and explaining recovery under claim not warranted "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to claimant and windfall to party sought to be charged).

### C. The Jollys' Declaratory Judgment Claim

The parties cross-moved on the Jollys' declaratory judgment claim. "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all of the issues presented, and render the judgment the trial court should have." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). The Jollys sought a series of declarations:

1. The [2015 contingency-fee agreement] "superseded" all previous agreements involving the subject projects;

2. [Garcia-Vela's] alleged "joint venture" agreement was superseded by the [2015 contingency-fee agreement];

3. [Garcia-Vela] failed to obtain approval by RGCCISD of [the JE/JV] agreement;

4. [The Jollys] owe their fiduciary duties to its client, RGCCISD, and not to [Garcia-Vela];

5. [Garcia-Vela's] claimed "joint venture" agreement dated [March] 24, 2015 was/is not authorized and or approved in writing by RGCCISD;

6. [The JE/JV] agreement was not signed or agreed to by [Michael Jolly];

7. [Garcia-Vela's] claim for a division or arrangement for division of a fee with [the Jollys] fails to comply with Texas Disciplinary Rule of Professional Conduct 1.04(f)(2) because RGCCISD did not consent in writing to the terms of the arrangement prior to the time of the claimed association;

8. [Garcia-Vela's] claim for reasonable value of legal services fails to comply with Texas Disciplinary Rule 1.04(g) because [Garcia-Vela] failed to properly and timely account for those services;

9. [The Jollys] are entitled to recovery of court costs and reasonable and necessary attorney fees associated with this case which will follow in a future motion;

10. [Garcia-Vela's] entitlement to Attorney Fee's, if any, is governed by Texas Disciplinary Rule 1.04(g); and

11. [Garcia-Vela's] alleged "joint venture" agreement is void as matter of public policy.

To summarize, the Jollys sought declarations that: (1) the 2015 contingency-fee agreement superseded the JE/JV agreement, (2) the JE/JV agreement is unenforceable and void as against public policy, (3) the JE/JV agreement does not give rise to any fiduciary duties to Garcia-Vela; and (4) they were entitled to attorney's fees and costs.

To support their motion, the Jollys reurged their arguments in opposition to the JE/JV agreement. They further argued they earned their fees as to the district's construction defect litigation pursuant to the 2015 contingency-fee agreement, Garcia-Vela had no contractual interest in that agreement, and the agreement superseded the JE/JV agreement. Garcia-Vela's summary judgment motion on the Jollys' declaratory judgment claim reiterated the same arguments and evidence put forth to support her summary judgment motion for breach of the JE/JV agreement. The trial court granted the Jolly's motion on their declaration, except as to their request for attorney's fees and costs.

Turning to whether the 2015 contingency-fee agreement supersedes the JE/JV agreement, the 2015 contingency-fee agreement plainly provides it: "constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter unless modified in writing and with the 'Client's' express advanced authorization." Garcia-Vela does not dispute this language or its plain meaning. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.").

However, Garcia-Vela is not a party to the 2015 contingency-fee agreement, only to the JE/JV agreement. Even assuming the trial court erred in concluding the 2015 contingency-fee agreement superseded the JE/JV agreement, the JE/JV agreement is void and unenforceable as against public policy. And Garcia-Vela does not identify any basis for why she is entitled to fees beyond the JE/JV agreement. As a result, even if the trial court erred in granting a declaration that the 2015 contingency-fee agreement superseded the JE/JV agreement, this court cannot conclude any such error caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment,' or that the error 'probably prevented the appellant from properly presenting the case [on appeal].' . . . The rule applies to all errors." (quoting TEX. R. APP. P. 44.1(a))).

Because we have concluded the JE/JV agreement is unenforceable and void as against public policy and does not give rise to any fiduciary duties, and because the remainder of the Jollys' requested declarations granted by the trial court address the enforceability of the JE/JV agreement and fiduciary duties arising from it, we need not consider the remaining declarations. *See* TEX. R. APP. P. 47.1.[9]

## CONCLUSION

Accordingly, the trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice

---

[9] The Jollys also moved for summary judgment on Garcia-Vela's declaratory judgment counterclaim. Garcia-Vela does not challenge the trial court's judgment on her declaratory judgment counterclaim, and we affirm. *See* TEX. R. APP. P. 47.1; *Jarvis*, 298 S.W.3d at 313.